| | |
|---|---|
| TAMMY HUGHES--BROWN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **AMENDED ORDER**[1] |
| CAMPUS CREST GROUP, LLC, THE ) | |
| GROVE STUDENT PROPERTIES, LLC, ) | |
| formerly known as CAMPUS CREST ) | |
| REAL ESTATE MANAGEMENT, LLC, ) | |
| CAMPUS CREST CONSTRUCTION ) | |
| LLC, CAMPUS CREST DEVELOPMENT ) | |
| LLC, CAMPUS CREST PROPERTIES ) | |
| LLC, CAMPUS CREST DISTRIBUTION ) | |
| LLC, CAMPUS CREST LEASE LLC, ) | |
| CAMPUS CREST AVIATION LLC, ) | |
| CAMPUS CREST VENTURES I LLC, ) | |
| CAMPUS CREST ASHEVILLE ) | |
| MANAGER LLC, CAMPUS CREST AT ) | |
| ASHEVILLE LLC, MADEIRA GROUP ) | |
| LLC, MXT CAPITAL LLC, 339 UNION ) | |
| STREET HOUSE LLC, Jointly and ) | |
| Severally, and all doing business as ) | |
| CAMPUS CREST COMMUNITIES, and ) | |
| MICHAEL S. HARTNETT, Individually, ) | |
| and TED W. ROLLINS, Individually, and ) | |
| as the Alter-Egos of CAMPUS CREST ) | |
| COMMUNITIES, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on Plaintiff's Motion to Consolidate and Brief in

---

[1] On February 4, 2011 this Court issued an Order on Plaintiff's Motion to Consolidate with an error in the caption regarding Plaintiff's name. This Amended Order, also issued on February 4, 2011 does not change the substance of this Court's previous Order.

1

Support (Documents #10,11), both filed on September 13, 2010. On October 7, 2010, Defendants filed a Response to Plaintiff's Motion to Consolidate (Document #19) to which Plaintiff filed a Reply (Document #20) on October 15, 2010.

## I. BACKGROUND

Plaintiff Tammy Hughes-Brown was employed by the defendants[2] (collectively, Campus Crest) from June 2, 2008 to the present. Hughes-Brown was hired as an executive assistant to Defendants Michael Hartnett and Ted Rollins at Campus Crest's Charlotte headquarters, during which time she and other female employees were allegedly subjected to a sexually and racially hostile work environment due to the offensive conduct of Campus Crest's Chief Operating Officer Brian Sharpe. Hughes-Brown alleges that although she never received any formal reprimands regarding her work, she was transferred to an administrative assistant position on March 2, 2009, under the direction of Jason Young and Marc McNeill, who continued to create a hostile working environment. Hughes-Brown contends that in her place, Campus Crest hired a less-experienced, white male who was paid a higher salary for the exact same duties that she had performed.

On October 5, 2009, Hughes-Brown was reduced to a part-time position after allegedly confronting Young about offensive comments he had made. She contends that this was in retaliation for having complained about the sexually-hostile working environment to which she had been subjected. Hughes-Brown contends that she complained about the conduct of Hartnett, Rollins, Young, MacNeil, and particularly Sharpe on many occasions to Campus Crest's human

---

[2] In her complaint, Plaintiff has named 18 defendants, all doing business as Campus Crest Communities, Inc. as well as Michael S. Hartnett and Ted. W. Rollins, Individually as the alter-egos of the Corporate Defendants.

resources manager, Janice Miller, but while Miller acknowledged and sympathized with Plaintiff's concerns, Miller said that nothing could be done as she had previously communicated these concerns to Rollins and Hartnett, who did nothing.

On October 6, 2009, Hughes-Brown filed a charge of discrimination against Campus Crest with the Equal Employment Opportunity Commission (EEOC), alleging violations of Title VII. Two days later, Hughes-Brown states that she again complained to Miller and also to Campus Crest's in-house legal counsel abut her work environment and retaliatory demotion to part-time employment. The next week, Hughes-Brown was moved from the area just outside Young's office to the general office area allegedly referred to by Sharpe as "the hood." On October 21, 2009, Hughes-Brown amended her charge of discrimination to include claims that she had been subjected to a sexually and racially hostile working environment and that she had been the subject of retaliation, all in violation of Title VII.

In January 2010, Hughes-Brown returned to full-time status, working at the receptionist desk, where she claims to be subject to restrictions that no other administrative employee endures. The EEOC issued its notice of right to sue on May 12, 2010 and Hughes-Brown filed her Complaint in this Court on August 9, 2010.[3] The plaintiff now seeks to consolidate the instant action with one currently pending before this Court– Civil Action No. 3:10cv00102, styled Heather McCormack & Nicole M. McAuliffe v. Campus Crest Group, LLC, et al. In that case, the plaintiffs allege that Brian Sharpe subjected them and other female employees to a sexually hostile and demeaning work environment in violation of Title VII.

---

[3] Plaintiff's Complaint contains four causes of action: 1) Violation of Title VII (Sex and Race Discrimination); 2) Violation of 42 U.S.C. § 2000e (Retaliation); 3) Imposition of Personal Liability as to Defendants Rollins and Hartnett for Violations of Title VII and State Law; and 4) Constructive Trust.

## II. STANDARD OF REVIEW

Consolidation of cases is governed by Rule 42(a) of the Federal Rules of Civil Procedure, which provides as follows:

> **(a) Consolidation.**
>
> If actions before the court involve a common question of law or fact, the court may: 1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay.

Fed.R.Civ.P. 42(a).

According to the Fourth Circuit, "district courts have broad discretion under [Rule] 42(a) to consolidate causes pending in the same district." *A/S Ludwig Mowinckles Rederi v. Tidewater Constr.*, 559 F.2d 928, 933 (4th Cir. 1977). When exercising this discretion, district courts should "weigh the risk of prejudice and confusion versus the possibility of inconsistent adjudication of common factual and legal issues, the burden on the parties, witnesses, and judicial resources by multiple lawsuits, the length of time required to try multiple suits versus a single suit, and the relative expense required for multiple suits versus a single suit." *In re Cree, Inc.*, 219 F.R.D. 369, 371 (M.D.N.C. 2003) (citing *Arnold v. Eastern Air Lines*, 681 F.2d 186, 193 (4th Cir. 1982)).

## III. DISCUSSION

Applying Rule 42(a), the Court finds that while these cases involve <u>some</u> common

questions of law and fact, they are separate and distinct cases. Consolidation is therefore inappropriate.

In determining whether consolidation is appropriate, the Fourth Circuit case of *Harris v. L & L Wings, Inc.*, 132 F.3d 978 (4th Cir. 1997) provides this Court with guidance. In *Harris*, two plaintiffs, both hourly employees that worked in the same warehouse, brought suit against their employer. *Id.* at 980-81. The discriminatory incidents alleged in both suits were essentially the same, occurred essentially at the same time, and were perpetrated by many of the same individuals. *Id.* Additionally, both cases relied on many of the same witnesses and the claims were answered with the same defenses. *Id.* at 982 n. 2. In sum, consolidation was appropriate because the cases were virtually identical.

This Court also finds instructive the case of *Huff v. Southwest Virginia Regional Jail Authority,* 2009 WL 94625 (W.D. Va. Jan. 14, 2009) (unpublished). In *Huff*, the plaintiffs' motion to consolidate was denied based on four reasons. First, the Court in *Huff* noted that although common identity existed among the Defendants, exact identity did not. *Id.* at *2. Second, the time periods of the Defendants' alleged misconduct occurred in each of the three cases was "widely divergent," as the plaintiffs' only common time period of employment was from October 6, 2005 through April 19, 2006, a period of approximately six months. *Id.* Third, one of the cases, while having some causes of action in common, alleged race discrimination, while the other cases alleged age and/or sex discrimination. *Id.* Fourth, due to the varying job titles and duties of the plaintiffs, the criteria the court would be required to use to evaluate the reasoning behind the termination and forced resignation of individual plaintiffs could be quite different for each plaintiff. *Id.*

This Court finds that the facts and circumstances at issue are distinguishable from *Harris* and are more similar to those presented in *Huff.* As in *Huff,* there exists some common identity among the Defendants, but there is not exact identity. Also like *Huff*, the time period where the alleged discriminatory acts varies amongst the plaintiffs. Indeed, several of the acts that Plaintiff Hughes-Brown complains of occurred when the plaintiffs in the other cases were no longer employees of any Defendant.

Further supporting the similarities to *Huff,* potential confusion of the issues is present because of the different causes of actions alleged in each complaint. *See Grayson v. K-Mart Corp.*, 849 F. Supp. 785, 788 (N.D. Ga. 1994) ("It is, of course, true that plaintiffs have alleged against defendant claims based upon the same general theories of law, but this is not sufficient."). While each complaint puts forward a claim of hostile work environment, Hughes-Brown is the only plaintiff to allege that she was unfairly demoted and subjected to disparate terms and conditions of her employment because of her race. As such, crucial evidence to Hughes-Brown's case will be completely different from the necessary evidence in the other plaintiff's cases.

Finally, the Court takes note of the different employment situations and characteristics of each of the plaintiffs. Hughes-Brown worked as an administrative assistant, while the plaintiffs in the other cases were management-level employees. As such, the criteria used to evaluate the appropriateness of the termination of the plaintiffs in the other cases will differ from the criteria used to analyze the propriety of the Defendants' decision to re-assign Hughes-Brown's employment duties. Moreover, the other plaintiffs in the other cases do not allege a pay disparity because of their race or gender. Finally, the other plaintiffs could not allege that they were subjected to any adverse action such as discriminatory transfer or demotion because of their

African American race, as both of the other plaintiffs are white.

The Court is well aware that consolidation of these cases would serve judicial economy and convenience, in that some of the defendants and witnesses will be the same, resulting in saving both time and resources. For the reasons outlined above, however, the Court finds that the potential confusion to the jurors and prejudice to the defendants outweighs any such judicial economy and convenience that would result from consolidation.

When considering the totality of the facts and circumstances surrounding the cases sought to be consolidated, the risk of juror confusion and prejudice to the defendants outweighs any benefits of judicial economy and convenience to be gained by consolidation.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion to Consolidate (Document #10) is **DENIED.**

Signed: February 4, 2011

Richard L. Voorhees
United States District Judge