IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:10cv366

| | | |
|---|---|---|
| TAMMY HUGHES-BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| CAMPUS CREST GROUP, LLC; | ) | |
| THE GROVE STUDENT PROPERTIES, LLC, | ) | |
| formerly known as CAMPUS CREST REAL | ) | |
| ESTATE MANAGEMENT, LLC, | ) | |
| CAMPUS CREST CONSTRUCTION | ) | |
| LLC, CAMPUS CREST DEVELOPMENT | ) | |
| LLC, CAMPUS CREST PROPERTIES | ) | |
| LLC, CAMPUS CREST DISTRIBUTION | ) | |
| LLC, CAMPUS CREST LEASE LLC, | ) | |
| CAMPUS CREST AVIATION LLC, | ) | |
| CAMPUS CREST VENTURES I LLC, | ) | |
| CAMPUS CREST ASHEVILLE | ) | |
| MANAGER LLC, CAMPUS CREST AT | ) | |
| ASHEVILLE LLC, MADEIRA GROUP | ) | |
| LLC, MXT CAPITAL LLC, 339 UNION | ) | |
| STREET HOUSE LLC, Jointly and | ) | |
| Severally, and all doing business as | ) | |
| CAMPUS CREST COMMUNITIES, and | ) | |
| MICHAEL S. HARTNETT, Individually, | ) | |
| and TED W. ROLLINS, Individually, and | ) | |
| as the Alter-Egos of CAMPUS CREST | ) | |
| COMMUNITIES, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**THIS MATTER** is before the court on the non-employer[1] defendants' Motion to Dismiss Plaintiff's Complaint (#5). The court has considered all the pleadings of record and conducted a hearing in this and in a companion matter that will not be consolidated herewith. After consideration of the arguments of respective counsel, the court enters the following findings, conclusions, and Order.

I.   Background

   A.   Plaintiff's Contentions

Plaintiff Tammy Hughes-Brown has been employed by the defendants from June 2, 2008, to the present. She was hired as an executive assistant to defendants Michael Hartnett and Ted Rollins at Campus Crest's Charlotte headquarters, during which time she and other female employees were allegedly subjected to a sexually and racially hostile work environment due to the allegedly offensive conduct of Campus Crest's Chief Operating Officer Brian Sharpe.

Plaintiff alleges that although she never received any formal reprimands regarding her work, she was transferred from her position as an executive assistant to an administrative assistant position on March 2, 2009, under the direction of Jason Young and Marc McNeill, who she contends continued to create a hostile working environment. Plaintiff contends that in her place, Campus Crest hired as executive assistant a less-experienced, white male who

---

[1] For purposes of simplicity, the court will refer to CAMPUS CREST GROUP, LLC and THE GROVE STUDENT PROPERTIES, LLC, formerly known as CAMPUS CREST REAL ESTATE MANAGEMENT, LLC, as the employer defendants. The court will refer to the remaining defendants as the non-employer defendants. Plaintiff's actual employer is not resolved by such reference, and no resolution should be inferred.

was paid a higher salary for the exact same duties that she had performed.

On October 5, 2009, plaintiff alleges that her employment was reduced to a part-time position after allegedly confronting Young about offensive comments he had allegedly made. She contends that this was in retaliation for having complained about the sexually-hostile work environment to which she had been subjected. Plaintiff contends that she complained about the conduct of Hartnett, Rollins, Young, MacNeil, and particularly Sharpe on many occasions to Campus Crest's human resources manager, Janice Miller, but while Miller acknowledged and sympathized with Plaintiff's concerns, Miller purportedly said that nothing could be done as she had previously communicated these concerns to Rollins and Hartnett, who did nothing.

On October 6, 2009, Hughes-Brown filed a charge of discrimination against Campus Crest with the Equal Employment Opportunity Commission (hereinafter "EEOC"), alleging violations of Title VII. Two days later, plaintiff alleges that she again complained to Miller and also to Campus Crest's in-house legal counsel about her work environment and retaliatory demotion to part-time employment.

The next week, she contends she was moved from the area just outside Young's office to the general office area allegedly referred to by Sharpe as "the hood." On October 21, 2009, she amended her charge of discrimination to include claims that she had been subjected to a sexually and racially hostile working environment and that she had been the subject of retaliation, all in violation of Title VII.

In January 2010, plaintiff was returned to full-time status, working at the reception

desk, where she claims she was subject to restrictions that no other administrative employee endured. The EEOC issued its notice of right to sue on May 12, 2010, and plaintiff filed her Complaint, from which these allegations have been drawn, in this Court on August 9, 2010.

**B.    Nature of the Dispute Underlying the Motion to Dismiss**

Defendants own and operate multiple apartment properties in multiple states, with a common theme of providing alternative, private housing for college students. Plaintiff contends that the Campus Crest enterprise is a vertically integrated business entity that creates separate legal entities to acquire the land, build the facilities, and then manage the properties. Campus Crest appears to create LLCs to accomplish the discrete task at hand, and then creates an LLC to hold and manage each property. Recently, it appears that Campus Crest has created a regular corporate entity.

**II.    Motion to Dismiss**

The non-employer defendants have moved to dismiss the alter ego claim for reasons more thoroughly discussed in the companion matter. Plaintiff contends that the non employer defendants are necessary parties because the true owners of Campus Crest, allegedly non-employer defendants Michael S. Hartnett and Ted W. Rollins, own substantial ownership interests in each of the Defendant LLC's operating under the name of Campus Crest Communities and they exercised complete dominion and control over the operations of each of them. Plantiff furthers allege that Defendants Rollins and Hartnett"were involved in every aspect of the business operations of the Campus Crest defendants.

The non-employer defendants have also moved to dismiss plaintiff's constructive trust

claim for reasons more thoroughly discussed in the companion matter. As to the claim for constructive trust, plaintiff contends that the court should impose a constructive trust over all the assets of the Campus Crest entities as well as the individual defendants because Defendants Hartnett and Rollins

> have siphoned out corporate assets through the payment of substantial salaries, non-monetary compensation, and bonuses such that the individual corporate Defendants would be unable or are unable to compensate victims of Defendant Campus Crest's discriminatory and/or unlawful business practices.

Complaint (#1), at ¶ 26. The non-employer defendants then move to dismiss the substantive claims asserted against them as there would be no connection (without alter ego or constructive trust) between those claims and such entities.

## III. Discussion

As discussed at the hearing, the court will withhold decision on the pending motion pending a brief period of discovery as to verticality.

> "To determine whether two entities should be treated as a single employer for Title VII purposes, the Second Circuit considers whether the two entities have: (1) interrelated operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or financial control." The second factor has been determined to be the most important. Generally, such a collapsing of two separate corporate entities should not be found unless the interrelatedness of the companies is pervasive.

Parrish v. Sollecito, 280 F.Supp.2d 145, 156 -157 (S.D.N.Y. 2003)(citations omitted). In this case, plaintiff appears to be attempting to both impose liability on the non-employer defendants as well as include them in determining the size of the relevant employer for purposes of 42 U.S.C. § 1981a(b)(3). A number of courts have determined that the inquiry concerning the identity of the employer is the same as the inquiry into determining the

relevant employer when applying the statutory cap. Vance v. Union Planters Corp., 209 F.3d 438, 447 (5th Cir.2000); Story v. Vae Nortrak, Inc., 214 F.Supp.2d 1209 (N.D.Ala. 2001). The scope of limited discovery will, therefore, focus on whether there is centralized control of labor relations between the employer and non-employer defendants. Secondarily, the parties will focus on the existence of common management, whether there are interrelated business operations, and whether there is common ownership and financial control. Generally, this limited discovery may include insurance policies purchased by the original defendants and the new defendants (especially workers compensation insurance policies), the method and means of meeting payroll and paying trust fund taxes to the IRS, the members and officers of each entity and whether they overlap, any shared or centralized responsibilities as to personnel matters, and whether each entity maintains separate books and bank accounts (the production of which will not be required, but which may be identified by the terminal 4 digits of such accounts). At the conclusion of such discovery period, the parties shall jointly file a motion for further hearing of the pending motions. The court will not set limits as to numbers of interrogatories, depositions, requests for admissions, or requests for production of documents; rather, the court will simply instruct plaintiff that the scope of discovery is very limited and that such discovery does not concern the merits of her claim. This discovery is limited to the identity of her employer for liability and statutory cap purposes.

If a protective order is not already in place that would adequately protect such disclosures, the parties may make joint application by way of motion to Honorable David C.

Cayer, United States Magistrate Judge, for entry of such an Order.

* * *

Finally, while the goal is for such discovery to make it readily apparent as to whether the non-employer defendants are necessary to this litigation, the parties are, of course, free to discuss a more amicable resolution of this dispute. The court was encouraged that this action may well be resolvable inasmuch as the parties were able to agree to participate in limited discovery. The court would entertain a joint request to briefly stay these proceedings so that the parties can participate in mediation conducted by an appropriate mediator in light of these developments.

**ORDER**

**IT IS, THEREFORE, ORDERED** that the non-employer defendants' Motion to Dismiss Plaintiffs' Complaint (#5) is taken under advisement. The court will retain such motion for disposition, which will occur not later than September 2, 2011.

**IT IS FURTHER ORDERED** that

(1) limited discovery is opened as to the issue of verticality as herein provided. Such discovery shall close July 29, 2011;

(2) all discovery requests shall be served and depositions noticed so that the requested materials can be produced or the depositions taken by the end of such period;

(3) plaintiff shall tailor her requests and notices to garner only discovery related

to issues identified herein;

(4)  at the close of such discovery period, the parties shall file a motion for further hearing on the now pending motions, unless through such process the parties reach an amicable resolution of the pending motions; and

(5)  issues that may arise concerning the conduct of such discovery will be referred to Judge Cayer for resolution in his sound discretion.

Signed: June 6, 2011

Max O. Cogburn Jr.
United States District Judge